IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| A-76 TECHNOLOGIES, INC d/b/a<br>AIDANT BRANDS | § § § | |
| Plaintiff, | § § | Civil Case No. 4:21-cv-00923 |
| v. | § § | |
| MASS MANAGEMENT, LLC | § § § | |
| Defendant. | | |

**PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

A-76 Technologies, Inc. ("Plaintiff" or "A-76") files this Motion for Temporary Restraining Order (TRO) and Preliminary Injunction against MASS Management, LLC ("Defendant" or "MASS") pursuant to Federal Rule of Civil Procedure 65. A-76 requests a TRO and Preliminary Injunction prohibiting Defendant from using A-76's trademarks,[1] and would respectfully show as follows:

### I. INTRODUCTION & BACKGROUND

1. A-76 owns the federally registered trademarks "Rust Patrol" (United States Patent and Trademark Office Serial No. 5183475) and "Resisting Arrust" (United States Patent and Trademarks Office Serial No. 5297872). True and correct copies of A-76's Certificates of Registration for "Rust Patrol" and "Resisting Arrust" are attached as Exhibits 1 and 2, respectively.

2. A-76 entered into a distribution agreement with MASS pursuant to which MASS agreed distribute Rust Patrol, a commercial lubricant owned and manufactured by A-76.

---

[1] Plaintiff is not currently seeking a TRO and Preliminary Injunction based on MASS's infringement of its copyrights because Plaintiff has requested, but has yet to receive, certified copies of its copyright applications. Upon receipt, Plaintiff will seek injunctive relief based on MASS's copyright infringement.

Ultimately, MASS later terminated the distribution agreement after, apparently, working out a side deal with Dr. James Tour, the inventor of the formula.

3. Instead of licensing or purchasing the Rust Patrol and Resisting Arrust trademarks from A-76, the rightful owner of the trademarks, MASS made a deal with Dr. James Tour, the inventor of the Rust Patrol formula. While Dr. Tour may own the rights to the chemical formula of Rust Patrol, it is A-76 that owns the Rust Patrol and Resisting Arrust trademarks. MASS blatantly ignored this simple fact and began selling the formula under the trademarked Rust Patrol brand name and using A-76's trademarked slogan, Resisting Arrust.

4. In addition to blatantly using A-76's trademarks, MASS has further created confusion among purchasers by selling Rust Patrol on a new website with the domain name "rust-patrol.com" while knowing full well that A-76 sold an identical product on "rustpatrol.com." True and correct copies of a PDF version of "rustpatrol.com" are attached as Exhibits 4, 6, 7, 8, 10–12, 15, 17, 20, 22–33. True and correct copies of a PDF version of "rust-patrol.com," as of March 25, 2021, are attached as Exhibits 3, 5, 7, 9, 12, 14, 16, and 19.[2]

5. A-76 did not give MASS or any other person or entity any form of permission or license to use its registered trademarks.

6. MASS continues to market and sell Rust Patrol branded products, a blatant and indefensible infringement on A-76's trademark rights, with no signs of discontinuing is improper use. Thus, this situation calls for a TRO to maintain the status quo.

## II. ARGUMENT

### A. Standard of Review

7. A party seeking a TRO must show:

---

[2] Exhibits 3, 7, 12, and 19 include screenshots in addition to a PDF version of the webpage because the PDF version do not clearly show the contents of the webpage.

(1) a substantial likelihood that it will prevail on the merits, (2) a substantial threat that it will suffer irreparable injury if the injunction is not granted, (3) its threatened injury outweighs the threatened harm to the party whom it seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest.

*Google, Inc. v. Hood*, 822 F.3d 212, 220 (5th Cir. 2015). The movant must offer sufficient evidence of these requirements. *PCI Transp., Inc. v. Fort Worth & W. R. Co.*, 418 F.3d 535, 546 (5th Cir. 2005).

**B. A-76 is likely to succeed on the merits of its Trademark Infringement claims.**

8. To establish this requirement, A-76 must only make a prima facie case of infringement, and it need not prove that it will ultimately prevail. *Allied Home Mortg. Corp. v. Donovan*, 830 F. Supp.2d 223, 227 (S.D. Tex. 2001).

9. A-76 brought Trademark Infringement claims, among others, against MASS based on MASS's improper use of its trademarks "Rust Patrol" and "Resisting Arrust." To prevail on its trademark infringement claim against MASS, A-76 must show: (1) that it possesses a valid trademark, and (2) that MASS's use of A-76's Trademarks creates a likelihood of confusion as to source, affiliation, or sponsorship. *Paulsson Geophysical Servs., Inc. v Sigmar*, 529 F.3d 303, 309 (5th Cir. 2008).

*1. A-76 owns a valid Mark.*

10. Registration of a mark is prima facie evidence of validity and ownership. 15 U.S.C. §§ 1057(b), 1115(a). A-76's "Rust Patrol" and "Resisting Arrust" Trademarks have been registered with the USPTO since 2017, and both registrations are still active to this day. *See* Exhibits 1 and 3. Therefore, A-76 has prima facie evidence of ownership and validity of these trademarks.

## 2. MASS's use of A-76's Trademarks creates a likelihood of confusion.

11. Courts consider a non-exhaustive list of factors, known as the "digits of confusion," when evaluating the likelihood of confusion as to source, affiliation, or sponsorship which include: "(1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the produced or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media, (6) the defendant's intent, and (7) the evidence of actual confusion." *Bd. Of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008). No single factor is dispositive, and a finding of a likelihood of confusion need not be supported by a majority of the factors. *Id.*

12. <u>Type of Mark and Similarity.</u> Here, A-76's Trademarks are a standard word mark. Meaning, A-76's rights extend to the entire "Rust Patrol" brand name and the "Resisting Arrust" phrase, as well as their phonetic pronunciations. A-76's rights are not reliant on any specific design element associated with the names, nor are A-76's rights limited to the design of the words. MASS's use of "Rust Patrol" and "Resisting Arrust" is visually and phonetically identical. *See* Exhibits 3–20. This alone creates a likelihood of confusion. Therefore, this factor weighs in favor of this Court finding MASS's use of "Rust Patrol" and "Resisting Arrust" creates a likelihood of confusion.

13. <u>Similarity of Products.</u> It appears that MASS is selling the exact same product as A-76, likely using the same formula. *See* Exhibit G–H. Essentially, MASS is selling the exact same goods as A-76 and for which A-76 owns the registered trademark. Due to the identical nature of the products, this factor weighs heavily in favor of this Court finding that MASS's use of "Rust Patrol" and "Resisting Arrust" creates a likelihood of confusion.

14. <u>Identity of Purchasers.</u> A-76 and MASS sell the same goods in the same channel of trade, and thus their purchasers are also the same. Notably, MASS used to have a distribution agreement with A-76 for the distribution and sale of Rust Patrol, which gave MASS direct knowledge of where A-76's Rust Patrol products are sold and thus, an indication of who its purchasers are. This factor also weighs in favor of this Court finding that MASS's use of "Rust Patrol" and "Resisting Arrust" creates a likelihood of confusion.

15. <u>Identity of Advertising Media.</u> Until recently, A-76 operated and marketed its Rust Patrol products through its website with the domain name www.rustpatrol.com. Currently, MASS operates a website with the domain name www.rust-patrol.com, through which it markets and sells its infringing goods. MASS's domain name also happens to be nearly identical to A-76's domain name. *See* Exhibit 3–20. The content and layout of the website is also similar to A-76's Rust Patrol website. *See* Exhibit 3–20. Thus, this factor also weighs in favor of this Court finding that MASS's use of "Rust Patrol" and "Resisting Arrust" creates a likelihood of confusion.

16. <u>MASS's Intent.</u> A-76 began using its "Rust Patrol" and "Resisting Arrust" marks in commerce in August of 2016. Subsequently, MASS entered into a distribution agreement with A-76 to distribute, market, and sell A-76's products. However, MASS was unable to perform its obligations, and the parties began discussing a buy-out of the entire Rust Patrol brand and product line. These negotiations ultimately fell through as a result of MASS's now evident intent to sell the same goods as A-76's under A-76 trademarked brand name without A-76's permission or knowledge. The Fifth Circuit previously found intent to confuse "when the evidence indicates that the defendant, in choosing the mark, knew about the Plaintiff's mark and intended to capitalize on the plaintiff's popularity." *Streamline Production Systems, Inc. v. Streamline*

*Manufacturing, Inc.*, 851 F.3d 440, 456 (5th Cir. 2017) (citing *Bd. Of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 481–83 (5th Cir. 2008)). Throughout the last five years, A-76 has invested millions of dollars building goodwill in its Rust Patrol product line, and MASS knew this when it stole A-76's brand name and trademarks. This clearly shows MASS intended to ride the coattails of the goodwill A-76 spent years building with respect to the Rust Patrol name and trademarks. These facts weigh in favor of this Court finding that MASS's blatant infringement of A-76's marks is intentional.

17. In sum, every factor in the "digits of confusion" analysis weighs in favor of the Court finding MASS willfully and knowingly infringed on A-76's trademark rights, and also supports A-76's prima facie case of infringement. Therefore, A-76 has met its burden of proof that it is likely to succeed on the merits of its trademark infringement claims.

### C. A-76 will suffer an irreparable injury if this TRO is not granted.

18. While the Fifth Circuit has twice now declined to clarify if a presumption of irreparable harm arises upon a finding of likelihood of confusion, A-76 can still show it will suffer irreparable harm due to MASS's use of A-76 Trademarks regardless of such presumption. *See Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 313 (5th Cir. 2008); *Emerald City Mgmt., L.L.C. v. Kahn*, 624 F. App'x 223, 224 (5th Cir. 2015) (unpublished).

19. In *Emerald City Mgmt.*, the Fifth Circuit stated that the "[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill." *Emerald City Mgmt.*, 624 F. App.'x at 224. Here, MASS is selling identical goods to those sold by A-76, under the same brand name, and marketed toward the same purchasers. Exhibit 7–8. A-76 has no control over the goods MASS is currently selling under the "Rust Patrol" brand name and certainly is not receiving any compensation for these sales. Not only that, but MASS's website

Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction

6

Case 3:21-cv-00496-FDW-DSC   Document 7   Filed 04/06/21   Page 6 of 10

prominently displays Rust Patrol as one of its brands, complete with a registered trademark symbol. Exhibit 21. However, the current owner of the trademark for Rust Patrol is A-76, and there have been no assignments of the trademark. *See* Exhibit 1. This further adds to the confusion and A-76's loss of control of its goodwill and reputation.

20. A-76 was not and is not selling its produce when MASS began infringing because of a dispute with the formula's inventor. A-76 is and has been working on R&D to develop a new formula for Rust Patrol to sell under the same brand name. If MASS continues to market and sell the old formula of Rust Patrol under A-76's trademarks and branding, this will cause further harm to A-76's goodwill and reputation, not to mention consumer confusion. A-76 has not control over the old formula, and therefore cannot address any quality issues that may arise from this point forward, which would only add to the harm A-76 will suffer without a TRO.

21. As a small start-up, A-76 cannot afford the loss of control of its reputation and damage to its goodwill should two competing formulas of Rust Patrol—both marketed under A-76's registered trademarks. A-76 and Rust Patrol were born out of a project that the CEO and Co-Founder of A-76 completed while attending business school at Rice University. She started A-76 soon after, and it is still a small company with less than ten employees. MASS is a large distribution company that ships product worldwide to over fifteen countries. Exhibit 9. Clearly, MASS has a greater reach and a larger presence than A-76 in this industry. Rust Patrol is not the only product line MASS currently sells and it can therefore afford to stop selling these infringing goods for the duration of a TRO. Exhibit 21.

22. MASS's improper use of A-76's Trademarks now means that A-76 cannot control its own reputation and goodwill in the marketplace without an injunction halting MASS's use. This loss of control is sufficiently shows A-76 will suffer an irreparable injury and thus supports

the entry of a TRO. *See Laboratorios Pisa SA De CX v. PepsiCo Inc.*, No. 7:21-cv-00062, 2021 WL 783854, at *7 (S.D. Tex. Feb. 27, 2021) (holding that in a trademark infringement case, the loss of control over goodwill, customer reputation, and intellectual property is sufficient to support the entry of a temporary injunction).

### D. A-76's injury outweighs any harm MASS may suffer as a result of a TRO.

23. When determining whether to grant a TRO, a Court must weigh any harm to the plaintiff if the TRO is not granted against the potential hardship suffered by the defendant if the TRO is granted. *Id.* at *7. Importantly, if the only hardship to the defendant is that it will suffer lost profits from the alleged infringing activity, then this argument "merits little equitable consideration." *Id.* (quoting *Helene Curtis Indus. v. Church & Dwight Co.*, 560 F.2d 1325, 1333 (7th Cir. 1977)).

24. Here, the balance of equities weighs in A-76's favor because the only injury MASS could suffer from a TRO is the lost profits on its sale of infringing goods. Further, A-76 will suffer not only lost profits of its own, but uncontrollable damage to its goodwill and source affiliation if this TRO is not granted. MASS should not be allowed to profit off its blatant infringement and force A-76 to shoulder the majority of the harm when MASS is the bad actor here, not A-76. Therefore, A-76's injury outweighs any harm MASS may suffer as the result of the entry of a TRO, thus further supporting an entry of a TRO in this case.

### E. A TRO in this case would not disserve the public interest.

25. "[T]he public has an interest in preventing confusion about the origin of the products it buys. The public interest weighs in favor of granting [a] preliminary injunction." *Lakedreams v. Taylor*, 932 F.2d 1103, 1110 (5th Cir. 1991). Here, MASS is selling identical products under the same trademarked brand name as A-76, off of a website with a nearly

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

8

Case 3:21-cv-00496-FDW-DSC    Document 7    Filed 04/06/21    Page 8 of 10

identical domain name. MASS's infringement is likely to confuse the public on the origin and source of these goods. Further, the public interest is not served when intentional wrongdoers are rewarded, as would be the case if a TRO is denied here. MASS knew A-76 held the trademarks at issue here because it was A-76's distributor for Rust Patrol. After that agreement was terminated, MASS went behind A-76's back and colluded with the formula's inventor to market and sell the Rust Patrol formula under A-76's trademarks. MASS should not be allowed to continue profit from its knowing, blatant infringement of A-76's trademarks. Additionally, the public interest is "always served by . . . enjoining the use of infringing marks." *Fletcher's Original State Faire Corny Dogs LLC v. Fletcher-Warner Holdings LLC*, 434 F.Supp.3d 473, 497 (E.D. Tex. 2020) (quoting *Sparrow Barns & Events, L.L.C. v. Ruth Farms Inc.*, No. 4:19-CV-00067, 2019 WL 1560442, at *10 (E.D. Tex. Apr. 10, 2019). Thus a TRO and a temporary injunction in this case would serve public interests.

## III. CONCLUSION

A-76 respectfully requests the Court grant a TRO and Temporary Injunction ordering Defendant to immediately stop using and refrain from using A-76's registered trademarks "Rust Patrol" and "Resisting Arrust" in order to preserve the status quo and prevent further irreparable harm to A-76.

Respectfully submitted,

/s/ Kristine B. Hubbard
KRISTINE B. HUBBARD
Bar No. 24110020
HICKS THOMAS, LLP
700 Louisiana, Suite 2300
Houston, Texas 77002
Tel: (713) 547-9100
Fax: (713) 547-9105
khubbard@hicks-thomas.com
COUNSEL FOR PLAINTIFF, A-76
TECHNOLOGIES, INC.